# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOSEPH F. ZENNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 4:16-CV-51-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Joseph F. Zenner, seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits and for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied him disability benefits and supplemental security income and erred by failing to provide "good reasons" for discrediting the opinions of treating physicians; making a "patently wrong" adverse credibility determination; failing to adequately account for limitations in concentration, persistence, and pace; failing to evaluate new and material evidence; and failing to consult a medical expert regarding whether the Plaintiff's limitations medically equaled the relevant listings.

## BACKGROUND

On February 12, 2013, the Plaintiff filed his Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on April 11, 2011. (R. 26.) His claims were denied initially

on April 11, 2013, and upon reconsideration on June 6, 2013. (*Id.*) On December 3, 2014, the Plaintiff appeared with counsel and testified at a video hearing before an administrative law judge (ALJ). (*Id.*) Leonard M. Fisher, a vocational expert, also appeared and testified at the hearing. (*Id.*) On December 22, 2014, the ALJ denied the Plaintiff's application, finding he was not disabled prior to his date last insured, June 30, 2013. (R. 26–40.) On April 28, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On June 27, 2016, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity ("SGA"). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from his alleged onset date, April 11, 2011, to his date last insured, June 30, 2013. (R. 29.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including cervical degenerative disc disease status post fusion, remote fracture of tibia, remote left hip injury, diabetes mellitus, hypertension, and cognitive dysfunction. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (*Id.*) The ALJ found that the Plaintiff's medically determinable impairment of mood disorder was not a severe impairment because it did not cause more than minimal functional limitations. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" ("RFC")—the types of things he can still do, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except that:

> [H]e can never climb ladders, ropes, or scaffolds. He is limited to occasional rotation of the neck, and he is limited to jobs that require no more than occasional

exposure to vibration and to hazards, such as dangerous moving mechanical parts or unprotected heights. The claimant is able to understand, remember, and carry out simple instructions; to make judgments on simple work-related decisions; to interact appropriately with supervisors and coworkers in a routine work setting; and to respond to usual changes in a routine work-setting.

(R. 32.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from his alleged onset date to his date last insured. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 33.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified, and his ex-wife filed a third-party report, regarding his level of pain and the functional restrictions on the Plaintiff's daily activities. The Plaintiff described lingering effects from three surgeries, including back pain when he "gets up and moves." (R. 32.) The Plaintiff also reported that "he has to sit down and recline to take the pressure off his neck, and described the pain as the weight of his head shooting pains down into his back, arms, and fingers, necessitating that he lie down." (*Id.*) He testified that he could lift and carry only ten pounds comfortably, "sit for 1 hour, and stand for 1 ½ to 2 hours as long as he is moving around." (*Id.*) However, he indicated that "he has to lie down for two hours after standing and that after sitting for one hour, he has to recline for one hour to take pressure off his neck." (*Id.*) He further testified that his neck and shoulder pain requires him to lie down for three quarters of the day. (*Id.*) He also claimed that he had trouble with comprehension and memory and that he needs his ex-wife to take him everywhere and explain things (*Id.*) However, the Plaintiff's ex-wife's third party report indicated that he was able to make simple meals, do light cleaning such as folding

4

towels, drive short distances, run errands, and help package small items for his ex-wife's eBay store. (*Id.*)

The ALJ noted both that the Plaintiff's claims regarding the intensity, persistence, and limiting effects of his symptoms were disproportionate with the objective medical evidence, as shown by the Plaintiff's conservative treatment records, and that other parts of the Plaintiff's testimony were incompatible with his claimed level of incapacity, undermining the Plaintiff's credibility. (R. 33–38.)

The Plaintiff had past relevant work as a house repairer, which is a skilled, medium physical demand job as defined by the Dictionary of Occupational Titles ("DOT") but performed by the Plaintiff at the heavy physical demand. (R. 39.) The Plaintiff also had past relevant work as a tractor-trailer truck driver, which is a semiskilled, medium physical demand as defined by the DOT but performed by the Plaintiff at the medium to very heavy physical demands. (*Id.*) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since his alleged onset date. (R. 40.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if

5

supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be

6

affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the ALJ failed to incorporate limitations into his RFC to account for all of his medically determinable impairments, both severe and non-severe. Specifically, the Plaintiff argues that his RFC does not account for limitations in concentration, persistence, and pace as a result of his mental impairments. The Plaintiff also argues that, because these limitations were not properly incorporated into his RFC, the hypothetical posed to the vocational expert regarding existing jobs that the Plaintiff could perform was flawed.

The ALJ stated that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties," although those difficulties did not meet or medically equal the severity of one of the listed impairments.[1] (R. 31.) The ALJ considered the Plaintiff's allegations of difficulty with concentration and memory and that his ex-wife has to explain television shows to him. (*Id.*) The ALJ noted that the Plaintiff did "better with a written list to complete tasks, that he gets confused with filling out forms, and that he sometimes gets confused when watching TV." (*Id.*) The ALJ further noted that the Plaintiff had received a diagnosis of traumatic brain injury/cognitive impairment. (*Id.*). Thus, "[b]ased upon the totality of the evidence, the [ALJ] [found] that this cognitive impairment is a severe impairment and that it supports a . . . moderate limitation in maintaining concentration, persistence, or pace." (*Id.*) In the Plaintiff's RFC, the ALJ accounted for the Plaintiff's cognitive impairment by limiting him to carrying out only

---

[1] The Commissioner argues that the record does not support a finding of a limitation in concentration, persistence, and pace, but the Court notes that the ALJ found such a limitation did, in fact exist. (R. 31.)

7

"simple instructions," making "judgment on simple work-related decisions," interacting "appropriately with supervisors and coworkers in a routine work setting," and responding to "usual changes in a routine work setting." (R. 32.)

However, the Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); *see also Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015) (limiting a person to simple, repetitive work with "few if any work place changes and not more than occasional interaction with coworkers or supervisors" insufficient to address moderate limitations in concentration, persistence, or pace); *Stewart v. Astrue*, 561 F.3d 679, 985 (7th Cir. 2009) (noting repeated rejection of the contention that "restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public" accounts for limitations in concentration, persistence, and pace); *Craft*, 539 F.3d at 677–78 (restriction to unskilled, simple work insufficient to account for difficulties with memory, concentration, and mood swings). Thus, the RFC does not properly account for all of the Plaintiff's limitations.

Moreover, the Seventh Circuit has "stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational experts must consider deficiencies of concentration, persistence, and pace." *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). When the ALJ posed a hypothetical to the vocational expert regarding the existence of other jobs of sufficient number in the economy that the Plaintiff could perform, the ALJ referenced only the limitations in the RFC and did not reference the fact that the Plaintiff had difficulties with concentration, persistence and pace.

Failure to incorporate references to concentration, persistence, and pace in this manner in a hypothetical to a vocational expert may be excusable if a medical expert testifies and "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." *See Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010). However, *Milliken* is not applicable to the instant case. The Commissioner has pointed to no specific indication in the record limiting the claimant to "simple instructions," making "judgment on simple work-related decisions," interacting "appropriately with supervisors and coworkers in a routine work setting," and responding to "usual changes in a routine work setting." *See Mollett v. Astrue*, No. 3:11-CV-238, 2012 WL 3916548, at *9 (N.D. Ind. Sept. 7, 2012) (finding *Milliken* inapplicable where "[t]he ALJ's hypothetical did not ask the [vocational expert] to accept the limitations of any particular physician; rather, [the ALJ] crafted his own RFC based on his opinion of the record as a whole"); *Potrebic v. Colvin*, 2:13-CV-126, 2014 WL 4722525, at *7 (N.D. Ind. Sept. 22, 2014) (remanding where "the ALJ did not rely on any medical expert to translate Plaintiff's moderate limitations in concentration, persistence, and pace into the functional limitation to 'simple, routine, and repetitive tasks'"). Moreover, by finding that that the Plaintiff had moderate difficulty with concentration, persistence, or pace, the ALJ's conclusion differed from two state agency medical consultants' conclusion that "there was no evidence of a mental medically determinable impairment." (R. 31); *see Manning v. Astrue*, 1:13-CV-7, 2013 WL 6095599, at *8 (N.D. Ind. Nov. 20, 2013) (finding *Milliken* not applicable when "the ALJ flatly rejected [the expert's] opinion that [the claimant] had 'mild,' rather than 'moderate,' restrictions in social functioning").

The Commissioner argues that the question posed to the vocational expert ("VE") nevertheless appropriately addressed all of the Plaintiff's limitations in concentration,

persistence, and pace because the Plaintiff described his limitations as being primarily physical in nature, citing *Simila v. Astrue*, where the Seventh Circuit found that a hypothetical limiting the claimant to unskilled work sufficiently incorporated all the claimant's limitations because limitation in concentration, persistence, and pace were "rooted in [the claimant's] allegations of pain." 573 F.3d 503, 522 (7th Cir. 2009). However, *Simila* is distinguishable. In *Simila* the mental diagnoses—chronic pain syndrome and somatoform disorder—causing the limitations in concentration persistence, and pace were clearly linked to the allegations of pain. *See Yurt*, 758 F.3d at 859 (distinguishing *Simila*). Here, the Plaintiff's cognitive impairment is not clearly rooted in his allegations of pain. Thus, the hypothetical posed to the VE "[did] nothing to ensure that the VE eliminated from [his] responses those positions that would prove too difficult for someone with [the Plaintiff's] [cognitive impairment]." *Id.*

Thus, the Court must remand this case for further consideration. On remand, the ALJ should ensure that any limitations found to exist are adequately incorporated into the Plaintiff's RFC and that any hypotheticals posed to a vocational expert adequately apprise the expert of each limitation. Because the Court is remanding on this issue, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on January 16, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION